IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


THE CONNOR GROUP, A REAL    :
ESTATE INVESTMENT FIRM,
LLC, et al.,

       Plaintiffs,       :     Case No. 3:14-cv-283

    v.

JAMES J. RANEY,       :     JUDGE WALTER H. RICE

       Defendant.

---

DECISION AND ENTRY SUSTAINING PLAINTIFFS' MOTION TO
REMAND AND FOR ATTORNEYS' FEES PURSUANT TO 28 U.S.C.
§ 1447(c) (DOC. #3); OVERRULING AS MOOT ALL OTHER PENDING
MOTIONS (DOC. #4 & DOC. #8); AND REMANDING THIS CASE TO
THE COMMON PLEAS COURT OF MONTGOMERY COUNTY, OHIO;
DIRECTIVE TO COUNSEL REGARDING AMOUNT OF ATTORNEYS'
FEES; TERMINATION ENTRY

---

Pending before the Court is the Motion to Remand and for Attorneys' Fees

Pursuant to 28 U.S.C. 1447(c) (Doc. #3) filed by The Connor Group, A Real Estate

Investment Firm, LLC ("The Connor Group") and Meridian Apartment Manager, LLC

("Meridian") (collectively, with The Connor Group, "Plaintiffs"). For the reasons

set forth below, Plaintiffs' motion is SUSTAINED.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

This case began as a defamation case in state court.  The Connor Group is an Ohio limited liability company based in Montgomery County, Ohio.  In addition to real estate investment, the Connor Group also engages in the management of apartment communities.  Meridian is a Delaware limited liability company that owns the Meridian Apartment complex in Franklin County, Ohio.  The Connor Group manages the Meridian Apartments.  Defendant James J. Raney ("Raney" or "Defendant") is a former tenant of Meridian Apartments.  Am. Compl. (Doc. #2 at 1-2); Answer (Doc. #1-6 at 1).

According to Plaintiffs, Defendant began a "campaign" in the fall of 2012 to "publicly disparage" them and cause "damage [to] their business, trade, and reputation" by making a number of allegedly untrue statements.  Am. Compl. (Doc. #2 at 2).  They allege that Defendant made statements that they:

> (a) were "gaming the system" relating to online apartment ratings; (b) engage in a practice known as "slamming" which involves changing consumer's utilities providers without their authorization; (c) engage in or encourage "deceptive practices"; (d) have engaged in a "pattern of fraud"; (e) pay residents for providing favorable online reviews concerning Plaintiffs to falsely improve Plaintiffs' online ratings; (f) engage in internet spamming; (g) were "jackals"; (h) engage in illegal practices including illegal clauses in their leases; (i) have so many unhappy residents that they must be busy answering all of their complaints; (j) threatened Defendant with eviction for attempting to form a tenants' association; (k) "piss" down their employees' backs; (l) do not care about residents and provide poor service; (m) will throw residents under the bus; (n) are insensitive to and would not properly deal with employees with cancer; (o) give residents a reason to fear Plaintiffs; and (p) engage in "tactics and schemes" that are being exposed across the country and are driving away potential tenants.

2

Compl. (Doc. #2-1 at 2).

Plaintiffs filed suit in the Court of Common Pleas of Montgomery County,

Ohio, alleging one count of defamation, on September 20, 2013. *Id.* In their

Complaint, they demanded the following relief:

> A. That Connor Group be awarded compensatory damages against
>    Raney in an amount in excess of $25,000 as to each and every
>    defamatory statement made by Raney;
>
> B. That Meridian be awarded compensatory damages against Raney in
>    an amount in excess of $25,000 as to each and every defamatory
>    statement made by Raney;
>
> C. That Connor Group be awarded punitive damages, including
>    reasonable attorney's fees, against Raney in an amount in excess
>    of $25,000 as to each and every defamatory statement made by
>    Raney;
>
> D. That Meridian be awarded punitive damages, including reasonable
>    attorney's fees, against Raney in an amount in excess of $25,000
>    as to each and every defamatory statement made by Raney [.]

*Id.* at 3.

On January 21, 2014, Plaintiffs filed an Amended Complaint, adding a claim

for intentional and tortious interference with prospective business relationships.

Am. Compl. (Doc. #2 at 4). They also included allegations that Defendant had

posted "disparaging statements and innuendo" on a website, rentn.org, and on

social media, sometimes under pseudonym, stating:

> (a) that Connor Group and its affiliated properties engage in "payola"
> for online reviews; (b) that Connor Group and its affiliated properties
> do not spend money on needed repairs on residents apartments; (c)
> that Connor Group instead is diverting investor dollars to themselves
> for construction of corporate headquarters; (d) that for 15 years
> Connor Group put as little back into property maintenance as possible

3

> and "financially raped" residents; (e) that Connor Group and its affiliates are slumlords; (f) that Connor Group and its agents are unethical; (g) that Connor Group entices others to the Dark Side; (h) that Connor Group disagrees with the First Amendment; (i) that Connor Group is guilty of sexism and men are praised and women are overlooked, and misattributing that statement in an effort to give it credibility; (j) posting pictures of a property that was in disrepair and claiming that Connor Group owned that property but was hiding the fact; and (k) displaying computer generated images of people and picket signs derisive of Connor Group and its properties.

*Id.* at 2. Plaintiffs asked for the same relief as they had in the original Complaint for their defamation claims, but added prayers for "compensatory damages against Defendant in an amount in excess of $25,000" and "punitive damages against Defendant in an amount in excess of $25,000" on the intentional and tortious interference with prospective business relationships for each Plaintiff. *Id.* at 4-5.

Defendant filed a Motion to Dismiss, or in the Alternative, to Transfer Venue, on April 2, 2014. The state court overruled the motion on May 19, 2014. Defendant then filed an Answer to the Amended Complaint on June 5, 2014. Doc. #1-6.

On June 27, 2014, Plaintiffs filed a Motion to Compel and a Motion for Sanctions. According to Plaintiffs, Defendant had been unresponsive to their requests for electronically stored information on his computer related to the statements that formed the basis for their claims. *See* Entry Granting Plaintiffs' Motion to Compel (Doc. #14).

On July 3, 2014, Defendant filed an Amended Answer, denying that any of the statements were defamatory and accusing Plaintiffs of quoting them out of

4

context, with hundreds of pages of printouts from the website he had maintained as exhibits.  Doc. #1-8, #1-9, & #1-10.

On July 17, 2014, Defendant filed a Motion for Judgment on the Pleadings. Doc. #1-11.  Pointing to the exhibits that he had attached to his Amended Answer, Defendant argued that all of the statements that formed the basis for Plaintiffs' claims were either true, or were opinions that were not defamatory.

Plaintiffs filed a Memorandum in Opposition to Defendant's Motion for Judgment on the Pleadings on August 14, 2014.  Therein, they argued that it was procedurally improper for Defendant to file a Motion for Judgment on the Pleadings based on the voluminous papers attached to the Amended Answer, which they characterized as a self-serving, unauthenticated mass of papers that did not present the entire factual context relevant to their claims.  This amounted to a procedurally improper invitation for the state court to convert the motion into one for summary judgment.  Doc. #1-12.

On August 21, 2014, Judge Huffman granted Plaintiffs' Motion to Compel Discovery.  Doc. #1-14.  The court found that "Defendant ha[d] utterly failed to comply with Plaintiff's discovery requests and ha[d] failed to assert meritorious objections."  In order to prevent the spoliation of evidence, she ordered Defendant, on pain of sanctions, "to cause a forensic image to be made of his computer" within seven days to allow a search for electronic records.

5

Before Judge Huffman could rule on his Motion for Judgment on the Pleadings, Defendant filed a Notice of Removal on August 27, 2014. Doc. #1. According to Defendant, he had received discovery responses on August 22, 2014, and "verified" them on August 25, 2014, events that first alerted him that the amount in controversy was $100,000. *Id.* at 2.

On September 3, 2014, Plaintiffs filed a Motion to Remand and for Attorneys' Fees Pursuant to 28 U.S.C § 1447(c). Doc. #3. Therein, Plaintiffs argue that the removal was improper because Defendant had notice, based on the language of the Complaint and the Amended Complaint, of the amount of damages they sought against him over six months before filing the notice of removal. *Id.* at 6-9. They also point to statements that Defendant himself made in emails and on the internet months before filing the Notice of Removal to demonstrate that he was on notice of the amount in controversy. *Id.* at 10. Plaintiffs also move the Court for an award of attorneys' fees, based on the impropriety of removal and their assertion that it was timed to delay or avert the litigation in state court that had not been proceeding in Defendant's favor. *Id.* at 11-13.

Plaintiffs filed a Supplemental Memorandum in Support of the Motion to Remand on September 19, 2014, in order to provide evidence of further statements by Defendant that he was aware of the amount in controversy before the August 22, 2014, date asserted in the Notice of Removal. Doc. #6.

6

Defendant filed a Memorandum in Opposition to the Motion to Remand on October 6, 2014. Doc. #12. Therein, Defendant makes several arguments against remand. First, he was never served with the Amended Complaint in February, 2014, as Plaintiffs assert, as the original Complaint was served on him instead. *Id.* at 4-5. Second, he could not ascertain that the amount in controversy exceeded $75,000, because the Ohio Civil Rules prohibit a plaintiff from pleading more than $25,000 on each claim. *Id.* at 5-8. Because there were only two claims in the Amended Complaint, it was only reasonable for him to infer that Plaintiffs sought $50,000 in damages from the pleadings, which he describes as ambiguous. *Id.* at 9-13. Third, in contrast to the Amended Complaint, the discovery responses unambiguously demonstrated that Plaintiffs each sought in excess of $100,000 in damages. *Id.* at 13-15.

Plaintiffs filed a Reply Memorandum in Support of their Motion to Remand on October 20, 2014. Doc. #15. Therein, they argue that the original Complaint clearly put Defendant on notice of the amount in controversy, because they sought damages in excess of $25,000 for each and every defamatory statement. *Id.* at 2. Defendant's own statements online shortly thereafter demonstrate that he had actual notice of the amount of damages they sought. *Id.* at 3. Furthermore, Defendant's argument that he was never served with the Amended Complaint is without merit because the original Complaint contained the same prayer for relief, and Defendant himself waived service of the Amended Complaint. *Id.* at 4-5.

7

Defendant litigated his case in state court for six months before filing the Notice of

Removal, which Plaintiffs believe demonstrates a waiver of his ability to remove

the case to this Court. *Id.* at 6. Finally, Plaintiffs assert that the extended

deadline for filing for removal after receipt of a paper that first establishes

removability does not apply, because Defendant knew from the pleadings that the

case was removable and the discovery responses on which his argument relies

contain the same language as the prayer for damages in the pleadings. *Id.* at 6-10.

## II.   ANALYSIS

A defendant may remove a civil case brought in state court to federal court

if the federal court would have had original jurisdiction over the case.  28 U.S.C.

§ 1441(a).  Federal district courts have original jurisdiction over "all civil actions

where the matter in controversy exceeds the sum or value of $75,000" and the

matter is between citizens of different states.  28 U.S.C. § 1332(a).  The removing

defendant bears the burden of establishing that the district court has jurisdiction

over the matter. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir.

2001).  Plaintiffs' motion presents two issues, which the Court will address in

turn.  First, whether this case should be remanded  to state court; and, second, if

remand is appropriate, whether Plaintiffs are entitled to an award of attorneys' fees

and costs incurred in filing this motion.

8

**A.      Remand under 28 U.S.C. § 1447(c)**

If a case is improperly removed, a plaintiff may file a motion to remand the

case back to state court. 28 U.S.C. § 1447(c). If the plaintiff moves for remand

based on "any other defect other than lack of subject matter jurisdiction," the

motion "must be made within 30 days after the filing of the notice of removal" by

the defendant. *Id.* The defendant bears the burden of demonstrating that it

complied with all procedural requirements of removal. *Parker v. Brown*, 570 F.

Supp. 640, 642 (S.D. Ohio 1983) (stating that "a party seeking to remove a case

to federal court has the burden of proving that all the requirements of removal

have been met," and that the "burden goes not only to the issue of federal

jurisdiction, but also to questions of compliance with statutes governing the

exercise of the right of removal").

The procedural requirement relevant here is set forth in 28 U.S.C.

§ 1446(b)(1), which states:

> The notice of removal of a civil action or proceeding shall be filed
> within 30 days after the receipt by the defendant, through service or
> otherwise, of a copy of the initial pleading setting forth the claim for
> relief upon which such action or proceeding is based, or within 30
> days after the service of summons upon the defendant if such initial
> pleading has then been filed in court and is not required to be served
> on the defendant, whichever period is shorter.

Because this "statutory provision is phrased in mandatory terms," the 30-

day time limit for filing for removal is strictly construed. *May v. Johnson Controls,*

*Inc.*, 440 F. Supp. 2d 879, 882 (W.D. Tenn. 2006). "When the defendant should

9

clearly ascertain from the circumstances and the original complaint that the case is removable, the defendant must remove, if at all, within 30 days of receipt of that complaint." *Mielke v. Allstate Ins. Co.*, 472 F. Supp. 851, 853 (E.D. Mich. 1979). However, "if the case stated by the initial pleading is not removable," a separate 30-day period begins to run after the defendant's receipt of "a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

Here, Plaintiffs argue that because the case was plainly removable based on the face of the initial pleadings, Defendant failed to comply with the 30-day period under 28 U.S.C. § 1446(b)(1). In turn, Defendant argues that the interrogatory responses he received on August 22, 2014, qualified as "other papers" under 28 U.S.C. § 1446(b)(3) from which he could first ascertain removability, and his Notice of Removal was timely filed within 30 days of their receipt.

The parties do not dispute that this case meets the amount in controversy requirement to confer diversity jurisdiction on the Court. They do, however, dispute when Defendant could first ascertain that the amount in controversy requirement was met. This issue is key to determining whether, as Defendant insists, he complied with the procedural requirements of the removal statute, or, as Plaintiffs argue, he forfeited his right to remove this case to federal court. The Court's analysis must, therefore, start with an examination of the "initial pleading setting forth the claim for relief" to determine whether it adequately put Defendant

10

on notice of the amount in controversy, and therefore, his duty to file for removal within 30 days thereafter.

In the Sixth Circuit, "the amount in controversy should be determined 'from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect.'" *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007). Furthermore, "the amount in controversy for purposes of diversity jurisdiction, at least in the context of removal, should be determined solely by considering the plaintiff's complaint." *Firestone Fin. Corp. v. Syal*, 327 F. Supp. 2d 809, 811 (N.D. Ohio 2004). To determine whether a complaint pleads an amount in controversy that satisfies the requirements for removal, "the federal courts must, of course, look to state law to determine the nature and extent of the right to be enforced in a diversity case." *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352-53 (1961). An individual plaintiff's claims and requests for damages may be aggregated to satisfy the amount in controversy requirement, but the claims of multiple plaintiffs may not be added to one another for that purpose. *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 462 (6th Cir. 2010) (stating that "punitive damages may be aggregated with other damages to satisfy the amount-in-controversy requirement"); *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) (citing *Snyder v. Harris*, 394 U.S. 332, 335 (1969)) ("While a *single* plaintiff may aggregate the value of her claims against a defendant

11

to meet the amount-in-controversy requirement . . . the same is not true with respect to multiple plaintiffs").

Here, Plaintiffs' Amended Complaint clearly put Defendant on notice that the case was initially removable. Plaintiffs stated two claims in their Amended Complaint: Count I alleged defamation, and Count II alleged intentional and tortious interference with actual and prospective business relationships. Doc. #2. Under Ohio law, both of these common law torts allow the recovery of compensatory and punitive damages. *See*, *e.g.*, *Byers v. Meridian Printing Co.*, 95 N.E. 917 (Ohio 1911) (describing common law rules that allow recovery for defamation); *Leal v. Holtvogt*, 702 N.E.2d 1246, 1266 (Ohio Ct. App. 1998) (upholding compensatory and punitive damages award where defendant had attempted, with actual malice, to put plaintiff out of business, because a false statement that injures a plaintiff's trade or profession is considered defamation *per* se, for which damages are presumed, and punitive damages are available if the plaintiff demonstrates actual damages or "that the other party acted with actual malice"); *Dolan v. City of Glouster*, 879 N.E.2d 838, 847, 2007-Ohio-6275 (Ohio Ct. App. 2007) (setting forth elements of tortious interference with a business relationship); *Reichman v. Drake*, 100 N.E.2d 533, 537 (Ohio Ct. App. 1951) (acknowledging the relevancy of "ill will, spite, or hatred" if punitive damages are sought in an action based on tortious interference with prospective business relationship). Here, for the defamation claims, each Plaintiff sought compensatory damages "in an amount in

12

excess of $25,000 as to each and every defamatory statement" and punitive damages "in an amount in excess of $25,000 as to each and every defamatory statement." Doc. #2 at 4. For the tortious interference claims, each Plaintiff sought "compensatory damages against Defendant in an amount in excess of $25,000" and "punitive damages against Defendant in an amount in excess of $25,000." *Id.* at 5. Aggregating the damages sought by each individual Plaintiff shows that each sought, at a minimum, $100,000 from Defendant. Thus, considering the claims of only one Plaintiff, as is proper to determine the amount in controversy for diversity of citizenship jurisdiction, the amount in controversy exceeded the jurisdictional threshold of $75,000. *Everett*, 460 F.3d at 822. The Amended Complaint was, therefore, initially removable.

Defendant argues that Plaintiffs never served him with the Amended Complaint, so the 30-day time period under 28 U.S.C. § 1446 could not have been started. Doc. #12 at 5. He has submitted a declaration stating that his wife received a summons on February 8, 2014, that was accompanied only by the original Complaint. Doc. #12-1. Although Plaintiffs do not dispute that they mistakenly served Defendant with a copy of the original Complaint instead of the Amended Complaint at that time, Defendant's argument is not well taken for several reasons. First, Defendant stipulated to a waiver of service in exchange for additional time to respond to the Amended Complaint. Plaintiffs have attached emails as exhibits to a declaration by their attorney demonstrating this agreement.

13

Doc. #15-1 at 2-3. It is true that the Supreme Court strictly interprets the requirement that service, or its procedurally proper equivalent, triggers the 30-day period for removal under 28 U.S.C. § 1446(b). *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service"). However, even while emphasizing the importance of service of process to a defendant's due process rights, the *Murphy Bros.* decision acknowledged a court's ability to exercise personal jurisdiction over a defendant who waives service. *Id.* at 350-51. Because Defendant waived service in exchange for an extension of time to answer, he cannot now argue that a defect of service prevented the statutory time limit for filing for removal from running.

Second, even if Defendant's argument regarding service had merit, the original Complaint that was successfully served on him was more than adequate to provide notice of the removability of this action. The original Complaint states only the defamation claim, not the second claim for tortious interference with actual and prospective business relationships. Nevertheless, each Plaintiff expressly demanded compensatory damages "in an amount in excess of $25,000 *as to each and every defamatory statement*" and punitive damages "in an amount in excess of

14

$25,000 *as to each and every defamatory statement*." *Id.* at 9 (emphasis added).

The Complaint listed sixteen allegedly defamatory statements that Plaintiffs

attributed to Defendant. *Id.* at 8. Sixteen allegedly defamatory statements, for

which each Plaintiff sought over $50,000, should have put Defendant on notice

that each Plaintiff sought in excess of $800,000 in damages, well over the

jurisdictional threshold of $75,000 under 28 U.S.C. § 1332(a). Thus, the pleading

that Defendant actually received was sufficient to put him on notice that the

amount in controversy requirement for diversity jurisdiction had been satisfied,

and, as a result, that he had the right to remove this case under 28 U.S.C. § 1441.

Defendant argues that the amount in controversy was not ascertainable from

the original Complaint because Ohio Civil Rule 8(A) prohibits a plaintiff with an

unliquidated claim from pleading more than $25,000 in damages. The rule states

that:

> If the party seeks more than twenty-five thousand dollars, the party
> shall so state in the pleading but shall not specify in the demand for
> judgment the amount of recovery sought, unless the claim is based
> upon an instrument required to be attached pursuant to Civ. R. 10.
> At any time after the pleading is filed and served, any party from
> whom monetary recovery is sought may request in writing that the
> party seeking recovery provide the requesting party a written
> statement of the amount of recovery sought.

Ohio Civ. R. 8(A). According to Defendant, he complied with the rule by

requesting a written statement of the recovery sought by serving an interrogatory

on Plaintiffs. Only when he received a response stating that each Plaintiff sought

at least $50,000 for each of the two claims in the Amended Complaint did he first

15

ascertain that the "ambiguously pleaded" claims sought damages in excess of amount in controversy required for removal. Doc. #12 at 5-14.

A similar situation arose in *McCraw v. Lyons*, 863 F. Supp. 430 (W.D. Ky. 1994). In *McCraw*, the state pleading rule had required the plaintiff to "set forth a claim for relief without specifying damages" when he filed suit in state court. *Id.* at 433. The defendant did not remove the case within the 30-day time period under 28 U.S.C § 1446(b), asserting that "he could not ascertain the potential amount of damages from the Amended Complaint." *Id.* at 432. He argued that "the case did not become removable until Plaintiff specified the amount of his claim in the Answer to Interrogatories," which sought "$75,000 as compensatory damages for physical pain and mental suffering, $100,000 as punitive damages, and court costs." *Id*. When considering the plaintiff's motion to remand, the district court noted that "[w]hen a defendant has missed the thirty-day deadline imposed by § 1446(b) and asserts that he is entitled to an extension, the relevant question becomes whether the defendant *could have* removed the case within the time limit." *Id.* at 434 (citing *Keller v. Carr*, 534 F. Supp. 100, 103 (W.D. Ark. 1981) and *Mielke v. Allstate Ins. Co.*, 472 F. Supp. 851, 853 (E.D. Mich. 1979)). The court also stated that:

> Because state courts are well-equipped to handle diversity cases, there is no reason to allow a defendant additional time if the presence of grounds for removal is unambiguous given the defendant's knowledge and the claims made in the initial complaint. In other words, even where the amount of damages is not specified, if the defendant is able to ascertain from a fair reading of the complaint or

16

other papers filed that the minimum jurisdictional amount exists, he cannot "sit idly by" while the statutory period runs.

*Id.* (citations omitted).

The *McCraw* court also acknowledged that state pleading rules that limit a plaintiff's ability to quantify damages may create difficulties for a defendant considering removal, because such rules can obscure the basis for federal jurisdiction in a pleading. *Id.* at 433 ("Determining whether grounds for removal are present is complicated where, as here, state rules prohibit plaintiffs from specifying an amount of damages in the pleadings"). Nevertheless, the court concluded that the defendant's removal had been untimely. The "various tort claims" and prayer for "damages to compensate for physical injury, medical expenses, mental suffering, and emotional distress," in addition to "punitive damages and costs," were all sufficient to "have alerted Defendant that Plaintiff was seeking an amount in excess the [amount] required to attain federal court jurisdiction." *Id.* at 434.

As in *McCraw*, the Court is unconvinced by the argument that Ohio's pleading rule obscured the basis for federal jurisdiction in the initial pleading, entitling Defendant to an extension of the time for removal upon receipt of Plaintiffs' discovery responses. As discussed, a fair reading of the Complaint should have made it clear that Plaintiffs sought compensatory damages "in excess of $25,000 as to each and every defamatory statement" and punitive damages "in excess of $25,000 as to each and every defamatory statement" for sixteen

17

separate allegedly defamatory statements on the defamation claim, an amount in excess of $800,000 sought by each Plaintiff.  A fair reading of the Amended Complaint, which included the additional claim of tortious interference with actual and prospective business relationships, should have put Defendant on notice that each Plaintiff sought even more in damages.  As pleaded, Plaintiffs' statements are much more precise than the unliquidated demands that the *McCraw* court found to unambiguously signal federal court jurisdiction.

Furthermore, the *McCraw* defendant received discovery responses stating amounts that sharply contrasted with the unliquidated demands in the complaint. Here, in contrast, Plaintiffs' Interrogatory Responses addressing damages, which Defendant asserts are what justified removal, are practically identical to the statements made in Plaintiffs' pleadings:

> 77.  Identify the amount of damages sought under count one of the amended complaint.
>
> …
>
> Answer over objection:  $25,000 compensatory damages and $25,000 punitive damages for each defamatory statement as indicated in the Amended Complaint.
>
> …
>
> 82.  Identify the amount of damages sought under count two of the amended complaint.
>
> Answer over objection:  $25,000 compensatory damages and $25,000 punitive damages, as indicated in the Amended Complaint.

Doc. #1-15 at 49 & 52.

18

Interrogatory Response #77 is identical to the demands for relief on the defamation claim as stated in the both the original Complaint and the Amended Complaint, where each Plaintiff sought compensatory damages "in excess of $25,000 as to each and every defamatory statement" and punitive damages "in excess of $25,000 as to each and every defamatory statement." Doc. #2-1 at 3; Doc. #2 at 4-5. The relief sought in Interrogatory Response #82 is identical to that demanded by Plaintiffs on Count II of the Amended Complaint, for alleged intentional and tortious interference with actual and prospective business relationships. Doc. #2 at 5. For purposes of putting Defendant on notice of the potential amount in controversy in this litigation, there is no substantive difference between these responses and the initial demands that Plaintiffs made. Thus, there is no basis for Defendant's assertion that the responses constituted an "other paper from which it [could] first be ascertained that the case [was] removable" under 28 U.S.C. § 1446(b)(3), and no reason to extend the time period for removal.

Finally, Defendant's own admissions demonstrate that he had actual knowledge of the amount in controversy long before filing the Notice of Removal on August 27, 2014. "Ultimately, it is the Defendant's knowledge of the operative facts of removability that triggers the 30-day period." *Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 687 (S.D. Ohio 2012) (refusing to remand case as untimely filed when defendant removed case within 31 days of being

19

served with complaint that then prompted defendant to analyze internal data and realize amount of damages). "A defendant's actual knowledge of facts is important as to whether the case is removable based upon the initial pleading. Any direct written communication or pleading can add an important factual context." *Mozee v. Dugger*, 616 F. Supp. 2d 672, 674 (W.D. Ky. 2009) (remanding case after untimely removal where defendants had actual knowledge of the extent of plaintiff's injuries, medical expenses, and lost damages, and plaintiff requested that defendants "admit that Plaintiff was entitled to $100,000 in pain and suffering" at the same time they were served with "bare bones complaint").

In this case, several facts demonstrate that Defendant had actual knowledge of the amount in controversy long before he filed for removal. On February 20, 2014, Defendant emailed the company that hosted his blog to request the recovery of deleted posts, stating that "[i]n Sept. 2013, The Connor Group filed the defamation suit (+ $500K)." Doc. #3-1 at 4. In a fundraising campaign for his legal fees on the website fundrazr.com, Defendant stated that his efforts "to help residents caught up in the legal shenanigans of The Connor Group" had resulted in Plaintiffs "filing over a $1 million defamation suit in an effort to shut [his] website down." *Id.* at 6. Although the dates of the campaign are not clear, the sole $20 contribution listed is dated March 1, 2014, nearly six months before he filed the Notice of Removal. *Id.* Furthermore, Defendant posted the following message on

20

Twitter on June 10, 2014: "TCG sues me for $1M. Funny, I don't have $1M. Nor is it my job to go around asking people for million$." Doc. #6-1 at 2.

Defendant does not deny making these statements, but insists that they are "mere puffery" and attempts at generating "maximum public sympathy" that are irrelevant to the question of removability.[1] Doc. #12 at 18. The Court disagrees. Defendant's statements may have succeeded in generating public sympathy, but they also demonstrate that he subjectively perceived that Plaintiff's claims involved damages in excess of the minimum amount in controversy to create federal jurisdiction months before filing the Notice of Removal. The Court, therefore, agrees with Plaintiffs that Defendant's claim, that he first ascertained that amount in controversy exceeded $75,000 a few days before removal, is "implausible." Doc. #3 at 10. Based on the foregoing, the Court concludes that Defendant's Notice of Removal was untimely filed, and this case must be remanded to the Court of Common Pleas of Montgomery County, Ohio.

### B. Attorneys' Fees under 28 U.S.C. § 1447(c)

If a court remands a case to state court, the removal statute authorizes "payment of just costs and any actual expenses, including attorney fees, incurred

---

[1] In Defendant's Memorandum in Opposition, he does not deny that he made the statements. He also "admits to making statements on [his website] and under the pseudonym 'John Yossarian'" in his Amended Answer to Plaintiffs' Amended Complaint. Doc. #1-8 at 13. The Twitter statement was posted under the "John Yossarian" pseudonym. Doc. #6-1 at 2.

21

as a result of the removal."  28 U.S.C. § 1447(c).  The award of attorneys' fees is within the discretion of the district court.  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).  However, "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal."  *Id.*  When exercising its discretion to award attorneys' fees to a plaintiff who successfully seeks remand, a court "should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied."  *Id.* at 140.

The interrogatory responses that Defendant cited as the "other paper" to justify removal did not provide notice of an amount in controversy in excess of what Plaintiffs stated in the Complaint or the Amended Complaint, and a fair reading of either document indicated that they sought an amount of damages that justified removal at the time those pleadings were filed.  Furthermore, Defendant's own statements demonstrate that he had knowledge the amount in controversy exceeded the jurisdictional threshold months before he filed for removal.  For these reasons, the Court concludes that there was no objective basis for the Defendant's decision to remove this case.  Although the lack of an objective basis for removal justifies an award of attorneys' fees under *Martin*, in this case, deterrence provides an additional reason.  During the months preceding removal, Defendant actively

22

litigated this case.  He filed a Motion for Judgment on the Pleadings, but removed the case before Judge Huffman could decide the motion.  He filed for removal within days of Judge Huffman's August 21, 2014, order compelling him to comply with Plaintiffs' discovery requests, and two days before his scheduled deposition, which allowed him to indefinitely postpone it.  Doc. #3-1 at 40.  These circumstances suggest that Defendant removed this case "for the purpose of prolonging litigation," or to try his luck in another forum.  The Court concludes that an award of attorneys' fees and costs to Plaintiffs is justified to deter state court defendants considering removal under similar circumstances, and to compensate Plaintiffs for the expense of bringing their motion.

## III.   CONCLUSION

Based on the foregoing, Plaintiffs' Motion to Remand and for Attorneys' Fees Pursuant to 28 U.S.C. 1447(c) (Doc. #3) is SUSTAINED.  Plaintiffs are ORDERED to submit evidence, within fourteen (14) days from date, quantifying the amount of attorneys' fees and costs that they incurred in filing this motion.  Defendant will have fourteen (14) days thereafter to respond.

Plaintiffs' Motion to Stay (Doc. #4) and Defendant's Motion for Leave to File a Second Amended Answer (Doc. #8) are OVERRULED AS MOOT.

The captioned cause is REMANDED to the Common Pleas Court of Montgomery County, Ohio, and is hereby ordered terminated upon the docket

records of the United States District Court for the Southern District of Ohio,

Western Division, at Dayton.

Date: February 18, 2015        _____

                    WALTER H. RICE
                    UNITED STATES DISTRICT JUDGE

24